IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BOARD OF TRUSTEES, LABORERS' DISTRICT COUNCIL CONSTRUCTION INDUSTRY PENSION PLAN | : : : : : | CIVIL ACTION |
| v. | : : | NO. 21-1965 |
| ANTHONY BOWMAN, *et al.* | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                           October 19, 2021

A lifelong laborer divorced his wife over fifteen years ago. He signed a property settlement agreement in January 2003 confirming his wife's eventual share in a monthly stream of pension benefits offered by a retirement plan sponsored by his Laborers' Union based upon a specified calculation. The state court approving the divorce or the spouses' lawyers unfortunately never docketed the draft qualified domestic relations order confirming the wife's share of the monthly stream of his pension payments upon retirement. The laborer retired in 2018. The former spouses now could not agree as to the sharing of the pension payments and the ex-wife's lawyer threatened to sue the pension fund.

The pension fund interpleaded earlier this year asking our direction and deposited the challenged portion of the monthly stream with the Registry of our Clerk of Court. The husband moved for summary judgment seeking an order directing the entire monthly pension payment paid to him as there is no docketed qualified domestic relations order as required in the pension plan. We held a hearing, evaluated the credibility of the witnesses, and heard oral argument after the parties agreed the issue can be resolved as a matter of law. We find, as a matter of law, the parties' detailed property settlement agreement incorporated into the divorce decree signed by

the state court can qualify as a qualified domestic relations order particularly when, as here, the former spouses agreed to detailed assumptions which allow the pension fund to calculate the exact amount of the monthly pension payment to be paid to the divorced wife. We deny the husband laborer's motion for summary judgment. We enter judgment requiring the pension plan pay the former wife her defined calculated share of the monthly stream of defined pension payments presently held in escrow and moving forward.

I.   **Undisputed facts**[1]

Anthony Bowman worked as a laborer for many years. The Laborers' Union provided him with annuity and pension benefits under a defined Plan governed by the Employee Retirement Income Security Act of 1974.[2]

*The Bowmans agree to a property settlement agreement addressing the pension payments.*

Anthony Bowman divorced his spouse, Alisa Bowman, on August 19, 2003.[3] Both spouses retained counsel to document their divorce.[4] Mr. and Ms. Bowman signed a property settlement agreement on January 8, 2003 following a hearing before the Permanent Master in Divorce Dennis L. O'Connell.[5] Master O'Connell also signed the agreement.[6] Both parties and their respective attorneys attended the hearing with Master O'Connell. Both Mr. and Ms. Bowman testified they signed the property settlement agreement at the hearing in Master O'Connell's presence.[7] The state court entered a divorce decree on August 19, 2003, which expressly incorporated the property settlement agreement signed over eight months earlier.[8] Mr. Bowman never claimed the property settlement agreement did not reflect his understanding until he testified before us.

The property settlement agreement addresses Mr. Bowman's annuity account and pension benefit with Local 135 of the Laborers' Union.[9] It provides "a Domestic Relations Order

shall be entered hereafter whereby" Ms. Bowman shall receive $22,100.00 from the annuity account, with Mr. Bowman bearing any tax liability, and "a second Domestic Relations Order shall be entered hereafter whereby" Mr. Bowman's pension benefit "shall be divided on the basis of a coverture fraction, under which the denominator shall be the total number of months [Mr. Bowman] was a participant in said pension plan, and the numerator shall be a total number of months between August 1982 and October 1998."[10] The parties continued: "The aforesaid fraction shall be applied to [Mr. Bowman's] total pension benefit at the time he retires, and [Ms. Bowman] shall then be entitled to one-half of the monthly amount resulting from the application of this fraction."[11] The parties also required the bankruptcy court supervising Mr. Bowman's Chapter 13 bankruptcy approve the property settlement agreement.[12] Mr. Bowman testified the bankruptcy court approved the property settlement agreement.[13] He further testified he did not intend to give up any portion of his pension during the divorce.[14]

The property settlement agreement required two domestic relations orders, but the only court-approved domestic relations order in the record is for Mr. Bowman's annuity.[15] The Plan and the parties have a draft qualified domestic relations order ("QDRO") for the pension payments, but the state court never entered the draft order.[16] The parties do not dispute a qualified domestic relations order for the pension benefit has not been entered on the divorce docket.

***The Bowmans disagree about sharing the pension payments upon Mr. Bowman's retirement.***

Mr. Bowman retired and applied for his pension benefits from the Plan in October 2018.[17] He is entitled to his distribution except the Plan realized it did not have a court-approved qualified domestic relations order on file relating to his pension benefits, only a draft.[18] Between November 2018 and August 28, 2019, the Plan's attorney contacted Mr. Bowman, Ms. Bowman,

3

Attorney Odza, Attorney Consolo as well as Attorney Consolo's earlier law firm to obtain a court-approved order so Mr. Bowman could receive his pension benefits.[19] The Plan's efforts did not succeed.

The Plan determined the draft unsigned order and the property settlement agreement provided by the parties did not establish a qualified domestic relations order; but, in August 28, 2019, the Plan wrote to Mr. and Ms. Bowman to inform them if they agreed to certain assumptions regarding Ms. Bowman's entitlement to the benefits, then the Plan would be able to calculate the benefit owed to Mr. and Ms. Bowman, pay Mr. Bowman his portion, and set aside Ms. Bowman's potential portion until the parties resolved whether Ms. Bowman had a right to it.[20] Both parties agreed to the assumptions.[21]

The Bowmans continued fighting over the pension payments. Ms. Bowman threatened to sue the Plan if it distributed her claimed portion to Mr. Bowman. The Plan sued for interpleader asking we decide who is entitled to the pension payments.[22] Mr. Bowman belatedly moved for summary judgment a month after the pre-trial deadlines under our scheduling Order. We held oral argument on the Plan's motion for discharge and Mr. Bowman's motion for summary judgment, and the parties agreed we could decide whether the property settlement agreement as incorporated in the divorce decree, the draft qualified domestic relations order, and the parties' subsequent agreement to several assumptions allowing the Plan to calculate benefits owed together could constitute a qualified domestic relations order as a matter of law. All parties agreed to discharge the Plan and conceded the issues could be resolved as a matter of law with no genuine issues of material fact.  Mr. and Ms. Bowman testified and presented oral argument.

**II.     Analysis**

Mr. Bowman seeks an order directing the Plan to pay all pension benefits to him alone.[23] We find no basis to do so. We must enter judgment in Ms. Bowman's favor.

The sole legal issue before us is whether Mr. and Ms. Bowman's property settlement agreement as incorporated into the divorce decree, the draft pension benefits qualified domestic relations order, and subsequent assumptions agreed to by the parties in January 2020 are sufficient to entitle Ms. Bowman to a calculated portion of Mr. Bowman's pension plan benefits. This is a unique fact pattern because the Plan has not distributed the monthly pension payments to Ms. Bowman even though the Plan asked the Bowmans to agree to certain assumptions. The parties agreed to the assumptions.  Their agreement allowed the Plan to effectively treat the draft order and property settlement agreement as a qualified domestic relations order, calculate the monthly payments owed to Mr. and Ms. Bowman, and begin paying Mr. Bowman his benefits during the pendency of this litigation. We find the property settlement agreement incorporated into the divorce decree is sufficient to qualify as a qualified domestic relations order under ERISA and the Plan terms.

The Plan prohibits participants from assigning, alienating, transferring, selling or otherwise encumbering his or her pension benefits.[24] But the Plan excepts this prohibition if the participant grants a right in his or her pension benefits through a "qualified domestic relations order as defined by Section 414(p)" of the Internal Revenue Code.[25]

We must determine whether the divorce decree, incorporating the property settlement agreement, is a qualified domestic relations order as defined by the Plan. To be a qualified domestic relations order, the divorce decree and property settlement agreement must: (1) be a domestic relations order; (2) create or recognize the existence of an alternate payee's right to

5

receive all or a portion of the participant's pension benefits; and (3) meet the requirements of paragraphs 2 and 3.[26] Several of our colleagues reviewing this issue under ERISA have determined a divorce decree incorporating a property settlement agreement can constitute a qualified domestic relations order provided all requirements are met.[27]

The divorce decree incorporating the property settlement agreement by reference is a domestic relations order as defined by the Plan because it is a decree, which approves the property settlement agreement, and relates to "the provision of . . . marital property rights to a spouse" and is "made pursuant to a State domestic relations law."[28]

The divorce decree incorporating the property settlement agreement also creates or recognizes the existence of an alternate payee's right to receive all or a portion of the participant's pension benefits because the property settlement agreement grants Ms. Bowman a right to a portion of Mr. Bowman's pension benefits.[29]

The domestic relations order must also "clearly specif[y]": the name and last known mailing address of the participant and alternate payee; "the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined"; the number of payments or period to which such order applies; and each plan to which such order applies.[30] The domestic relations order cannot: require a plan to provide the alternate payee any type or form of benefit, or any option, not otherwise provided under the plan; require the plan to provide the alternate payee increased benefits; or require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.[31]

All elements are met here. Neither the divorce decree nor property settlement agreement clearly specifies the last known mailing address of Mr. and Ms. Bowman.[32] But we do not find this absence dispositive here. Judge Robinson found a divorce decree to be a qualified domestic relations order in *Johnson* when the decree did not explicitly state the last known address.[33] In *Johnson*, the divorce decree merely mentioned a property being awarded to the wife and a different property being awarded to the husband, which the wife argued sufficient to establish their new residential addresses.[34] She substantiated the addresses by other information in the record, including correspondence between the parties, which Judge Robinson found established the parties' possession of the address information.[35]

The Bowmans' property settlement agreement awards Ms. Bowman a house located at 5909 Belmar Terrace, Philadelphia, PA.[36] It is silent as to Mr. Bowman's address as is the divorce decree. The Plan, however, had the Bowmans' court-approved qualified domestic relations order relating to Mr. Bowman's annuity in its possession, which contained both of their addresses, as well as the draft qualified domestic relations order for the pension benefit, which also contained the addresses. The Plan's complaint also establishes it corresponded with both Mr. and Ms. Bowman after Mr. Bowman made a claim for his pension benefits and had correct, updated addresses for both as of January 2020.[37] The policy behind the qualified domestic relations order requirement is "to reduce the expense of ERISA plans by sparing plan administrators the grief they experience when because of uncertainty concerning the identity of the beneficiary they pay the wrong person, or arguably the wrong person, and are sued by a rival claimant."[38] This policy is satisfied even though the four corners of the divorce decree and property settlement agreement do not contain the address because the Plan: (1) knew Ms. Bowman to be the proper recipient of the benefits in light of the qualified domestic relations

7

order for the annuity and the draft for the pension; (2) corresponded with the parties about this issue; and (3) the Plan had Ms. Bowman's address, who is the ex-spouse claiming entitlement to benefits.[39]

The property settlement agreement also specifies the "amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined." The parties agreed in the property settlement agreement: Mr. Bowman's pension benefit "shall be divided on the basis of a coverture fraction, under which the denominator shall be the total number of months [Mr. Bowman] was a participant in said pension plan, and the numerator shall be a total number of months between August 1982 and October 1998. The aforesaid fraction shall be applied to [Mr. Bowman's] total pension benefit at the time he retires, and [Ms. Bowman] shall then be entitled to one-half of the monthly amount resulting from the application of this fraction."[40] The marital portion of the pension account is first calculated. Then, Ms. Bowman is entitled to one-half of the monthly payment owed to Mr. Bowman at retirement from the marital portion of the pension account. This prong is satisfied.

The number of payments or period to which such order applies is also established. The property settlement agreement affords Ms. Bowman "one-half of the monthly amount" of the marital portion of Mr. Bowman's pension plan at the time Mr. Bowman retires. The property settlement agreement does not grant Ms. Bowman fifty percent of the total marital portion of the pension account; it grants her fifty percent of the *monthly payment* amount owed to Mr. Bowman upon retirement from the marital portion of the pension. As Judge Leeson observed in *Einhorn*, this type of division of pension benefits is called the "shared payment approach," which "split[s] the actual benefit payments made with respect to a participant under the plan to give the alternate

payee part of each payment."[41] A division of pension benefits using the shared payment approach must establish the start and end dates of payments.[42]

The start date is established here. The property settlement agreement provides the amount owed to Ms. Bowman "shall be" determined "at the time [Mr. Bowman] retires," and Ms. Bowman "shall be entitled to one-half of the monthly amount resulting from the application of this fraction." The Plan begins to pay benefits upon a participant's retirement.[43] "After the nonowning spouse's interest is computed, that interest . . . is applied to each future benefit check which is due to the owning spouse."[44] Ms. Bowman's benefits start at the time Mr. Bowman retires and begins to receive his pension benefits.

The end date is similarly established. The Plan stops paying Mr. Bowan benefits upon his death.[45] Ms. Bowman's benefits end the same day due to the nature of the shared payment division approach: "Because the shared payment approach divides a single benefit held by the employee, it places a series of limitations upon the nonowning spouse's interest. The most significant of these limitations involves the employee spouse's death. When the employee dies, the employee's entitlement to retirement benefits vanishes. Since the nonowning spouse is merely sharing the employee's benefit, when the employee's benefit drops to zero, there is no benefit left to share."[46] There is no question the end date is the date Mr. Bowman stops receiving payments because of his death.[47]

We recognize our colleagues who have looked to the terms of the pension plan to find this prong satisfied, as we do here, have done so when the ex-spouse held a separate interest in the pension plan, not a shared payment interest.[48] A separate interest "divide[s] the participant's retirement benefit (rather than just the payments) into two separate portions with the intent of giving the alternate payee a separate right to receive a portion of the retirement benefit to be paid

9

at a time and in a form different from that chosen by the participant."[49] In *Einhorn*, Judge Leeson found this third-prong satisfied, reasoning: "[B]ecause the divorce decree grants [ex-wife] a separate interest in the pension, the decree necessarily specifies the 'number of payments or period' to which her interest applies. The defining feature of a separate interest in a pension plan is that the plan administrator 'treats each spouse as an independent participant under the plan,' which means that 'each spouse can determine independently the date on which his or her benefits will start.'"[50] Judge Leeson contrasted this to the shared payment interest, which "*may* only give the beneficiary the right to share in a certain number of benefit payments or the right to share benefit payments for a certain period of time."[51] Judge Orlofsky in *Smith* found this prong satisfied by looking to the terms of the plan. The property settlement agreement provided the husband "irrevocably assign[ed] to Wife the sum of 50% of his pension. The [plan] is hereby authorized to pay to Wife 50% of Husband's pension entitlement, directly to the Wife, at the time Husband begins to receive the said pension. If, a death benefit is paid in lieu of the pension, then a minimum of 50% of that death benefit shall be paid to [W]ife."[52] Judge Orlofsky reviewed the property settlement agreement and concluded the plan "need look no further than the terms of its own Pension and Retirement Plan" which provided "monthly payments are to be paid, to 'begin with the month following that in which the employee would have attained earliest benefit retirement age and end with the month in which the spouse dies."[53]

      In the unique facts presented today, it is immaterial Ms. Bowman has a shared payment interest instead of a separate interest. As discussed above, the property settlement agreement and Plan read together satisfactorily define the start and end date, and there is nothing in the plain language of the settlement agreement indicating Ms. Bowman's interest "*may* only [be to] a certain number of benefit payments or [to] benefit payments for a certain period of time."

10

Additionally, the parties' agreed-to assumptions proposed by the Plan before this litigation are wholly consistent with our finding here today.

After the Plan determined it did not have sufficient information to consider the property settlement agreement a qualified domestic relations order, but before instituting this litigation, the Plan asked Mr. and Ms. Bowman in August 2019 to agree to a series of "assumptions" so the Plan could calculate Mr. Bowman's pension payment and begin paying Mr. Bowman the amount of his pension not at issue in this litigation.[54] These assumptions go to the third prong. They include: "[(1)] Assignment to Ms. Bowman must be pursuant to a ***stream of payments*** form of order; [2] Ms. Bowman will be entitled to receive benefit payments if, as, and when the participant receives payment; [3] Payments to Ms. Bowman will cease at the earlier of her death or the death of Mr. Bowman (i.e. there will be no survivor benefits); and [4] Mr. Bowman will not be restricted in his form of payment at retirement (i.e. he will not be required to take the marital portion of his benefit as a joint and survivor form of benefit with Ms. Bowman as the contingent annuitant)."[55] The parties agreed to these assumptions—functionally agreeing if Ms. Bowman is entitled to the pension benefits under the property settlement agreement, these facts are assumed to be true and existing in the property settlement agreement. We do not consider these assumptions as a part of our analysis as to whether the divorce decree and property settlement agreement together constitute a qualified domestic relations order because they are not an order, judgment, or decree. But the assumptions to which the parties agreed fully support our reading of the property settlement agreement and Plan terms here.

The fourth prong is satisfied because the property settlement agreement specifies the plan at issue here as "the pension benefit with Local 135 of the Laborers['] Union."[56]

Having determined the four affirmative prongs are satisfied, we now turn to analyze whether the divorce decree and property settlement agreement require the Plan to provide Ms. Bowman any type or form of benefit, or any option, not otherwise provided under the Plan; requires the Plan to provide Ms. Bowman increased benefits; or requires the payment of benefits to Ms. Bowman which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.

We do not find these concerns apply today. We found under prong two Ms. Bowman is entitled to fifty percent of Mr. Bowman's monthly pension payment of the marital portion of his pension. We found under prong three Ms. Bowman's benefits start and end when Mr. Bowman's benefits start and end. The property settlement agreement as incorporated in the divorce decree does not require the Plan provide Ms. Bowman any type or form of benefit, or any option, not otherwise provided under the Plan or pay Ms. Bowman an increase in benefits. Neither the Plan nor Bowmans present any evidence of another qualified domestic relations order affording another person rights to Mr. Bowman's pension benefits. The Plan also does not argue the property settlement agreement cannot be a qualified domestic relations order because someone else is receiving the same proceeds the agreement seeks to afford Ms. Bowman. The Plan concedes the benefits are payable to Ms. Bowman or Mr. Bowman, and asks we enter an order finding which Bowman it must pay.

We therefore find the divorce decree incorporating the property settlement agreement is a qualified domestic relations order in accordance with the Plan's definition, which mirrors the definition in ERISA. Ms. Bowman is entitled to a portion of Mr. Bowman's pension benefit as determined by the property settlement agreement and previously calculated by the Plan.

**III.     Conclusion**

Ms. Bowman is entitled to the defined portion of the monthly stream of her ex-husband's pension plan as originally agreed between them eighteen years ago. We regret the confusion caused by unknown error by either counsel or the state court resulting in a draft qualified domestic relations order never being docketed by the state court in 2003 or during the pendency of this litigation despite Ms. Bowman's attorney's alleged promises to do so. But the draft order never being entered does not end our inquiry. The divorce decree and property settlement agreement are sufficient to be a qualified domestic relations order under the Plan and ERISA.[57] We enter judgment for Ms. Bowman requiring the Clerk of Court distribute the escrowed funds to Ms. Bowman and the Plan to being paying Ms. Bowman the calculated share of the monthly stream of pension payments.

---

[1] Mr. Bowman is the only party moving for summary judgment. ECF Doc. No. 25. Mr. Bowman incorporates an earlier filed stipulation of undisputed facts into his motion for summary judgment but provides no further facts or appendix for our review. *Id.* Ms. Bowman is pro se and did not file a written response. We held oral argument on October 13, 2021. Both parties agreed we may decide the issues of who is entitled to the remaining share of the pension fund as a matter of law and the upcoming trial would not be necessary. Plaintiff—the pension plan—provided extensive exhibits to its interpleader complaint, which neither party disputes are authentic. ECF Doc. No. 1. We rely upon the documents submitted by the Plan with its interpleader complaint, admitted allegations in the interpleader complaint, and the stipulation of undisputed facts filed at ECF Doc. No. 21 to establish the undisputed material facts in this matter.

[2] ECF Doc. No. 1 ¶¶ 1, 3.

[3] ECF Doc. No. 21-1 at 3 (divorce docket). We use the pagination assigned by CM/ECF docketing system.

[4] *Id.* at 1–3; *see also* ECF Doc. No. 26, Oct. 13, 2021 hearing, testimony of Ms. and Mr. Bowman. Attorney Frances Odza represented Ms. Bowman, and Attorney Colleen Consolo represented Mr. Bowman.

13

---

[5] ECF Doc. No. 1-5; Court Ex. 1. We introduced a copy of the property settlement agreement attached to the Plan's interpleader Complaint as Court Exhibit 1. We refer to the exhibit herein as Court Ex. 1.

[6] ECF Doc. No. 1-5 at 4; Court Ex. 1. We use the pagination assigned by CM/ECF docketing system.

[7] ECF Doc. No. 26, Oct. 13, 2021 hearing, testimony of Ms. and Mr. Bowman.

[8] ECF Doc. No. 28-1.

[9] ECF Doc. No. 1-5 ¶¶ 2–3, Court Ex. 1 ¶¶ 2–3. Plaintiff Plan is a trust fund established and maintained under Section 302(c)(5) of the Labor Management Relations Act of 1947 as amended and is an employee benefit plan under the Employee Retirement Income Security Act of 1974. ECF Doc. No. 1 ¶ 1.

[10] ECF Doc. No. 1-5 ¶¶ 2–3; Court Ex. 1 ¶¶ 2–3.

[11] ECF Doc. No. 1-5 ¶¶ 2–3, Court Ex. 1 ¶¶ 2–3.

[12] ECF Doc. No. 1-5 ¶ 8; Court Ex. 1 ¶ 8.

[13] ECF Doc. No. 26, Oct. 13, 2021 hearing, testimony of Mr. Bowman.

[14] *Id.* While Mr. Bowman testified as much, this testimony does not carry the day in light of the signed property settlement agreement, subsequent correspondence between Attorneys Odza and Consolo regarding the pension plan domestic relations order, his testimony the bankruptcy court approved the property settlement agreement, and Ms. Bowman's testimony she understood the property settlement agreement afforded her rights to the pension.

[15] ECF Doc. No. 8-1. Ms. Bowman proceeds pro se, and we construe this document as her answer to the complaint.

[16] ECF Doc. Nos. 21 at 1 ¶ 1–4; 21-1 (Docket sheet); 1-6 (draft QDRO relating to pension). Ms. Bowman contacted Attorney Odza during the pendency of this litigation, and Attorney Odza assured Ms. Bowman on February 23, 2021 she would resubmit the draft QDRO related to the pension to the divorce master. ECF Doc. No. 8-3. As of August 2, 2021, the divorce docket shows no other QDROs filed or signed after April 2003. ECF Doc. No. 21-1. It is unclear why Attorney Odzo did not file the QDRO in 2003 or in 2021 when Ms. Bowman brought the issue to her attention. Ms. Bowman alleges her attorney requested more money before fulfilling her obligation to file the document. ECF Doc. No. 8. If true, Attorney Odzo's conduct relating to the QDRO is concerning and may warrant disciplinary review.

[17] ECF Doc. No. 1 ¶ 20; ECF Doc. No. 5 ¶ 20 (Mr. Bowman's Answer admitting he applied for pension benefits in October 2018).

---

[18] ECF Doc. No. 1 ¶ 20; ECF Doc. No. 5 ¶ 20. Consistent with ERISA, the Plan contains a non-assignment of benefits provision, but the Plan excepts assignments made under a qualified domestic relations order as defined under 26 U.S.C. § 414(p). ECF Doc. No. 1-4, Article VI, ¶¶ 6.4(a)–(b); 29 U.S.C. § 1056(d)(1), (3)(A).

[19] ECF Doc. Nos. 1-7–1-13.

[20] ECF Doc. No. 1-13.

[21] ECF Doc. No. 1-17.

[22] *See, e.g.* ECF Doc. No. 1; ECF Doc. No. 1 ¶ 48.

[23] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). "Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving party, there exists 'no genuine dispute as to any material fact' and the movant 'is entitled to judgment as a matter of law.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018)). We do not weigh evidence or make credibility determinations. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)).

"The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323).

"A court may grant summary judgment to a non-moving party, as long as the opposing party has notice and an opportunity to respond." *Lee v. Sixth Mount Zion Baptist Church of Pittsburgh*, 903 F.3d 113, 118 (3d Cir. 2018) (citing Fed. R. Civ. P. 56(f): "After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."). "In fact, with notice to the parties, a court may enter summary judgment in favor of a non-moving party

15

sua sponte." *Id.* (citing *Celotex Corp.*, 477 U.S. at 326 ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence" (emphasis omitted) ); *Gibson v. Mayor of Wilmington*, 355 F.3d 215, 222-23 (3d Cir. 2004) (recognizing authority "to allow a court to grant summary judgment to a non-moving party" but requiring that the other party is "on notice that the court is considering a sua sponte summary judgment motion.").

[24] ECF Doc. No. 1-4, ¶ 6.4(a).

[25] *Id.*, ¶ 6.4(b). Section 414(p) defines a qualified domestic relation order as "a domestic relations order—(i) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and (ii) with respect to which the requirements of paragraphs (2) and (3) are met."[25] It defines a "domestic relations order" as "any judgment, decree, or order (including the approval of a property settlement agreement, which—(i) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and (ii) is made pursuant to a State domestic relations law." 26 U.S.C. §§ 414(p)(1)(A)–(B). These definitions mirror the definitions in ERISA, 29 U.S.C. §§ 1056(d)(3)(B)(i)–(ii).

[26] 26 U.S.C. §§ 414(p)(1)(A)(i)–(ii).

[27] *See, e.g. Smith v. Est. of Smith*, 248 F. Supp. 2d 348, 355–60 (D.N.J. 2003) (finding requirements for QDRO met in reviewing Plan, divorce decree, and property settlement agreement together); *Einhorn v. McCafferty*, No. 14-06924, 2016 WL 1273937, at *4–6 (E.D. Pa. Mar. 31, 2016) (finding the divorce decree incorporating the settlement agreement constituted a QDRO); *Johnson v. Nanticoke Mem'l Hosp., Inc.*, 700 F. Supp. 2d 670, 679 (D. Del. 2010) (finding the divorce order a QDRO); *but see Ashline v. Tri-State Envelope Corp.,* No. 18- 0434, 2018 WL 6178914, at *4 (M.D. Pa. Nov. 27, 2018) (finding divorce decree failed to meet elements of QDRO).

[28] *Id.*, ¶ 6.4(b) (incorporating definition set forth in 26 U.S.C. § 414(p)(1)(B)).

[29] ECF Doc. No. 1-5 ¶ 3, Court Ex. 1, ¶ 3.

[30] 26 U.S.C. §§ 414(p)(2)(A)–(D). These elements mirror the elements required in ERISA, 29 U.S.C. §§ 1056(d)(3)(C)(i)–(iv).

[31] 26 U.S.C. §§ 414(p)(2)(A)–(D). These elements mirror the elements required in ERISA, 29 U.S.C. §§ 1056(d)(3)(D)(i)–(iii).

[32] ECF Doc. No. 28-1; ECF Doc. No. 1-5, Court Ex. 1.

[33] *Johnson*, 700 F. Supp. 2d at 678.

---

[34] *Id.*

[35] *Id.*

[36] ECF Doc. No. 1-5 ¶ 1; Court Ex. 1 ¶ 1.

[37] *See, e.g.* ECF Doc. No. 1-16.

[38] *Smith*, 248 F. Supp. 2d at 355.

[39] We acknowledge the record reflects the Plan sent correspondence to the wrong address for Ms. Bowman, and the address contained in the property settlement agreement for Ms. Bowman is not her current address based on the record and her testimony in court. We do not find these facts dispositive of the issue before us, and we are not persuaded they require another decision.

[40] ECF Doc. No. 1-5 ¶ 3, Court Ex. 1 ¶ 3.

[41] *Einhorn*, 2016 WL 1273937, at *2 (citing U.S. Dep't of Labor, Emp. Benefits Sec. Admin., QDROs: The Division of Retirement Benefits through Qualified Domestic Relations Orders 29 (2014) http://www.dol.gov/ebsa/pdf/qdros.pdf) and *Samaroo v. Samaroo*, 193 F.3d 185, 187 n.2 (3d Cir. 1999); *see also* U.S. Dep't of Labor, Emp. Benefits Sec. Admin., QDROs: The Division of Retirement Benefits through Qualified Domestic Relations Orders 29–30 (2020) https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/publications/qdros.pdf [hereinafter QDROs] (last visited 10/14/2021) ("One approach that is used in some orders is to 'split' the actual benefit payments made with respect to a participant under the plan to give the alternate payee part of each payment. This approach to dividing retirement benefits is often called the 'shared payment' approach. Under this approach, the alternate payee will not receive any payments unless the participant receives a payment or is already in pay status.").

[42] QDROs at 30 ("An order providing for shared payments, like any other QDROs . . . must [] specify the number of payment or period to which it applies. This is particularly important in the shared payment QDRO, which must specify when the alternate payee's right to share the payments begins and ends.").

[43] ECF Doc. No. 1-4, ¶¶ 4.1–4.4; *see also Smith*, 248 F. Supp. 2d at 356 (relying on plan terms to determine payment start and end date).

[44] Brett R. Turner, 2 Equit. Distrib. of Property § 6:33 (4th ed.), Westlaw (last updated December 2020); *see also Einhorn*, 2016 WL 1273937, at *2 (citing previous edition of source approvingly).

[45] ECF Doc. No. 1-4, ¶¶ 4.8 ("The normal form of benefit under the Plan is a single life annuity . . . If the Spouse does not survive the Participant, benefits cease at the Participant's death.").

---

[46] Brett R. Turner, 2 Equit. Distrib. of Property § 6:33 (4th ed.), Westlaw (last updated December 2020).

[47] Ms. Bowman is a pro se litigant. She does not raise the issue of surviving spouse rights, but we feel it is appropriate to address it here so the Plan has clarity on its obligations under the divorce decree and property settlement agreement, which we find is a QDRO. There is nothing in the divorce decree or property settlement agreement "specifically assign[ing] surviving spouse rights" to Ms. Bowman. *See, e.g. Einhorn*, 2016 WL 1273937, at *6 (discussing requirements for QDRO to provide ex-spouse surviving spouse rights under the benefit plan). Additionally, the property settlement agreement provides: "Except as otherwise provided above, Wife hereby waives any claim that she would otherwise have in Husband's annuity and pension benefits from whatever source." ECF Doc. No. 1-5 ¶ 4; Court Ex. 1, ¶ 4. Ms. Bowman does not have surviving spouse rights under the divorce decree and property settlement agreement, and her right to benefits ends when Mr. Bowman's dies.

[48] *See, e.g. Einhorn*, 2016 WL 1273937, at *4–6; *Smith*, 248 F. Supp. 2d at 356–57.

[49] *Einhorn*, 2016 WL 1273937, at *2 (citing U.S. Dep't of Labor, Emp. Benefits Sec. Admin., QDROs: The Division of Retirement Benefits through Qualified Domestic Relations Orders 30 (2014), http://www.dol.gov/ebsa/pdf/qdros.pdf).

[50] *Id.* at *6.

[51] *Id.* (emphasis added).

[52] *Smith*, 248 F. Supp. 2d at 351.

[53] *Id* at 356.

[54] ECF Doc. No. 1-13.

[55] ECF Doc. No. 1-17 at 3. We use the pagination assigned by CM/ECF docketing system.

[56] ECF Doc. No. 1-5 ¶ 3; Court Ex. 1, ¶ 3.

[57] We ordered Mr. Bowman to file the Bowmans' divorce decree from 2003 because no party previously made it part of our record, and we required it to decide this issue of law. ECF Doc. No. 27. In submitting the divorce decree, Mr. Bowman's attorney, Mr. Johnson, also filed a "certification": "Mr. Bowman hereby asks the court to reject the request of Ms. Bowman to any funds based on the doctrines of waiver and laches for failure to take any timely action concerning the QDRO." ECF Doc. No. 28 ¶ 6. Mr. Johnson provides no authority or argument supporting this statement. We will not make the argument for him. But having found the divorce decree incorporating the property settlement agreement, which the state court entered in 2003, sufficient to constitute a qualified domestic relations order, we are not persuaded either of these doctrines bar Ms. Bowman's recovery here. She did not knowingly relinquish a right and she had no need to act until Mr. Bowman objected to the terms of the property settlement agreement earlier this

month.  Mr. Bowman is the person who did not challenge the divorce decree and incorporated property settlement agreement since 2003.  Ms. Bowman did not need to confirm or prosecute her claim to the pension payments confirmed in her divorce decree signed by the state court.